Dear Ms. Midura,
On behalf of the New Orleans City Council, you have requested an opinion of this office regarding the application of La.Const. art. VII, Sec. 14 to the distribution of Economic Development Funds ("EDF") millages to twenty private businesses and non-profit entities pursuant to proposed Ordinance No. 27,150, which was presented to the New Orleans City Council on September 11, 2008.
Specifically, you have asked the following:
 1. Does La.Const. art. VII, Sec. 14(A) prohibit EDF millage distribution unless an exception may be found under Art. VII, Sec. 14(b) or (c)?
 2. Must the City of New Orleans execute a cooperative endeavor agreement before making any distributions of funds to the private businesses and non-profit entities selected to receive the proceeds of the EDF millage?
 3. Must the cooperative endeavor agreement establish that: (a) the endeavor serves a public purpose; (b) the community receives a direct benefit; and (c) the value of the public funds distributed is commensurate or roughly proportional with the benefit received?
The EDF was created by ordinance in 1994 and consists of all proceeds of the special tax authorized by Proposition E of R-01-100, approved by the electorate. Section 70-405 of the New Orleans City Code sets forth the purposes of the EDF as follows: *Page 2 
 "[T]o provide for the economic development of the city through the financing of projects or activities, which shall be defined at those projects or activities, including but not limited to, projects or activities that expand and attract new business; retain and support growth in existing business; support workforce development and recruitment; diversify the economy; create new jobs and wealth; expand the local tax base; increase private sector capital and investment; and, generally improve the entrepreneurial climate of the city . . ."
No money may be appropriated from the economic development fund in any year unless and until the mayor has appointed an economic development advisory committee for the purpose of advising the mayor and the city council concerning appropriations from the economic development fund. Ordinance No. 70-406. Ordinance No. 27,150, passed by the New Orleans City Council on September 11, 2008, allocates the EDF millage to twenty private businesses or non-profit organizations.
All questions concerning the use of public funds must be examined in light of La.Const. art. VII, § 14, which provides, in pertinent part, as follows:
 "Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . ."
In Board of Directors of the Industrial Development Board of the Cityof Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners, Citizensof the City of Gonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11
(the "Cabela's" case), the Louisiana Supreme Court abandoned its prior analysis in City of Port Allen, v. Louisiana Mun. Risk Mgmt. Agency,Inc., 439 So.2d 399 (La. 1983), and articulated a new standard of review governing La.Const. art. VII, § 14(A), stating that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated." Cabela's, 938 So.2d at 20.
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure or transfer of public funds to be permissible under Art. VII, Sec. 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. TheCabela's standard places a strong emphasis on *Page 3 
the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds.
In response to your first question (whether La.Const. art. VII, Sec. 14(A) prohibits EDF millage distributions unless an exception may be found under Art. VII, Sec. 14(b) or (c)), it is the opinion of this office that public funds may be spent even if the expenditure does not fall within an exception in 14(B) or is not in a cooperative endeavor agreement pursuant to 14(C) so long as the public entity is able to establish that the donation meets all three prongs of the Cabela's test. We have not been asked and offer no opinion on whether the particular expenditures you propose to make are in compliance with La.Const. art. VII, Sec. 14(A).
In your second and third questions, you ask whether the City of New Orleans must execute a cooperative endeavor agreement before making any distributions of funds to a private entity, and if so, whether a cooperative endeavor agreement must expressly set forth: "(a) the public purpose for which the public funds are being spent; (b) that the expenditure is not gratuitous on its face; and (c) the value of the public funds distributed is commensurate or roughly proportional with the benefit received." Cooperative endeavor agreements are authorized by La.Const. art. VII, Sec. 14(C), which provides:
 For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
As discussed earlier in this opinion, Paragraph (C) merely supplements the prohibition against gratuitous donations contained in Paragraph (A). It does not create an exception or exemption from the general constitutional norm. Regardless of whether the expenditure of public funds is made pursuant to a cooperative endeavor agreement or not, the political subdivision must be able to prove that the expenditure meets all three prongs of the Cabela's test. Thus, we believe that in order to establish that a public purpose exists and to show the expenditure of public funds was non-gratuitous and constitutionally authorized, there must be some documentation of the agreement between the political subdivision expending public funds and the private entity receiving them establishing the funds are being spent for a public purpose and setting forth the obligations each party owes to the other. We would strongly recommend executing a cooperative endeavor agreement to satisfy this requirement.
In Cabela's, the Court ultimately based its determination that public funds were not gratuitously donated on the documents the parties executed, including a cooperative endeavor agreement, that stated the project was for a public purpose